## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT J. POWELL, DEBRA POWELL    :
and FISHIN FOR A GOOD TIME    :
CHARTERS, LLC    :
             **Plaintiffs**    :
   :
     **v.**    :       **3:CV-04-2611**
   :       **(JUDGE VANASKIE)**
   :
SOUTH JERSEY MARINA, INC. t/a    :
SOUTH JERSEY YACHT SALES,    :
OCEAN YACHTS, INC.    :
PERFORMANCE DIESEL, INC. and    :
MAN ENGINES AND COMPONENTS, INC.   :
   :
          **Defendants**    :

## MEMORANDUM

       This matter is before the Court on the Plaintiffs' motion to compel (a) the deposition of

Defendant Ocean Yachts' ("Ocean Yachts") President, John Leek, III ("Leek"), and (b) the

production of 12 issues of Ocean Yachts' bi-annual customer newsletter, "Passages," produced

from 2001 to 2006.  Following an effort to resolve the issue without judicial involvement,

Plaintiffs filed this motion on March 2, 2007.  Ocean Yachts responded on March 19, 2007, with

a brief in opposition to the motion to compel.  Plaintiffs filed a reply brief in support of the

motion to compel on March 28, 2007.  Because the noticed deposition is not likely to lead to

any relevant evidence not already produced in this protracted case, that part of the motion will

be denied.  Because Ocean Yachts has not substantiated its claim of undue burden and lack of

relevance with respect to the document request, that part of the motion will be granted.

## I. BACKGROUND

### A. Factual Background

On or about March 11, 2002, Robert J. Powell and Debra Powell purchased a boat from South Jersey Marina, Inc. t/a South Jersey Yacht Sales. (See Notice of Removal - Ex. A (Complaint), Dkt. Entry 1 at 10.)  They dubbed this boat "Reel Justice."  Ocean Yachts, Inc., the primary manufacturer of "Reel Justice," built the vessel in 2001. (See Br. in Opp., Dkt. Entry 168 at 1.)  MAN Engines and Components, Inc., constructed the two engines that powered "Reel Justice." (Id.)  Performance Diesel, Inc., a MAN distributor, sold the engines to Ocean Yachts, including the bolts and "cushy mounts" that secured the engine. (Id. at 1-2.)

On May 5, 2004, at approximately 3:05 pm, about twenty (20) miles from the coast of San Salvador, "Reel Justice" began taking on water. (Notice of Removal - Ex. A (Complaint), Dkt. Entry 1 at 11, ¶ 14.)  The ship's Captain stabilized the vessel and proceeded to Rum Cay, Bahamas, for repairs, where inspection revealed that the Starboard engine had broken free of the engine mount system and sprung forward, revealing that all six (6) of the engine mounts/isolator bolts had sheared and/or broken. (Id., ¶¶ 14-15.)  Further inspection indicated that five (5) of the six (6) Port engine mount/isolator bolts had also broken. (Id., ¶ 17.)

### B. Procedural Background

Robert J. Powell, Debra Powell, and Fishin For a Good Time Charters, LLC ("the

Plaintiffs") filed this action on November 19, 2004, in the Court of Common Pleas of Luzerne County, alleging that "Reel Justice" was manufactured improperly, "rendering... [it] defective and unreasonably dangerous," and leveling claims against a variety of companies that took part in the production and sale of the vessel. (See Notice of Removal - Ex. A (Complaint), Dkt. Entry 1 at 10, ¶ 12.)  Plaintiffs seek compensatory damages (including incidental and consequential damages), reasonable attorney's fees (including filing fees and costs of suit), diminution of value, punitive damages, and "any further relief" the Court finds "just and proper." (See id. at 19, ¶ 67.)  On December 3, 2004, Ocean Yachts removed the case to this Court, exercising its right under 28 U.S.C. §1441(b), as there is complete diversity between opposing parties and the amount in controversy exceeds $75,000. (See id. at 2, ¶ 9.)

At issue here is Plaintiffs' conflict with Ocean Yachts regarding the deposition of Ocean Yachts' President and the production of 2001-2006 issues of "Passages," Ocean Yachts' bi-annual customer newsletter.  On November 22, 2006, Ocean Yachts objected to the deposition, with counsel writing that he viewed the Plaintiffs' "ethics to depose Mr. Leek as nothing more than harassment." (See Pl.'s Mot. Compel - Ex. C, Dkt. Entry 163-5.)  On November 29, 2006, Ocean Yachts served Plaintiffs with their document discovery objections, indicating that the requests were "overbroad, and not reasonably calculated to secure any evidence in any way related to any matter at issue." (See Pl.'s Mot. Compel - Ex. G, Dkt. Entry 163-8 at 1.)  On December 1, 2006, Plaintiffs responded regarding the putative deposition, indicating that their

request was appropriate due to the President's alleged knowledge of "defects and deficiencies caused by the manufacturing process," which they inferred from comments made by his son, reported in the Winter 2005 edition of "Passages." (See Pl.'s Mot. Compel - Ex. D, Dkt. Entry 163-6.)  On December 14, 2006, Ocean Yachts replied in a very curt message that they "remain[ed] completely unpersuaded" that deposition of its President was appropriate, averring that the "Passages" article catalyzing the deposition request did not support such discovery, but rather "completely undermine[s] any basis you have for seeking the deposition..." (See Pl.'s Mot. Compel - Ex. E, Dkt. Entry 163-7.)  Both parties expressed their arguments during a telephone conference on December 20, 2006, in which the Court suggested that Plaintiffs file a motion to compel if they believed further discovery was warranted.

Plaintiffs did so, creating the controversy now before the Court.[1]  Plaintiffs argue their requests are appropriate given the broad scope of discovery in FRCP 26(b)(1), while Ocean Yachts contends that the limitations of FRCP 26(b)(2)(C) apply to both aspects of the motion.

## II.  DISCUSSION

### A. General Legal Standard for Discovery Disputes

The Federal Rules of Civil Procedure are liberal with respect to discovery, permitting

---

[1]      In Plaintiffs' original request for production of documents there were six categories of documents requested, of which the "Passages" issues were the first. (See Pl. Mot. Compel, Ex. F, Dkt. Entry 163-7 at 4.)  Plaintiffs have not motioned to compel the production of the other items.

parties to obtain even inadmissible material, "so long as it is relevant to the claim or defense of any party, unprivileged, and reasonably calculated to lead to the discovery of admissible evidence." City Line Construction Fire & Water Restoration, Inc. v. Heffner, et al., No. CV-07-1057, 2007 WL 1377643, at *2 (E.D. Pa. May 10, 2007).  When a party is served with a document or deposition request, it must produce the document or the individual to be deposed, or state specific objections to dispute those requests. See City Line, 2007 WL 1377643 at *1.  A moving party may then file a motion to compel under FRCP 37(a) to garner the sought-after information. Fed. R. Civ. P. 37(a).  _____

_____At this point the burden shifts to the party objecting to discovery to state the grounds for the objection with specificity, and not "[m]ere recitation of the familiar litany that an interrogatory or a document production request is 'overly broad, burdensome, oppressive and irrelevant.'" Momah v. Albert Einstein Medical Center, 164 F.R.D. 412, 417 (E.D.Pa. 1996), *quoting*, Josephs v. Harris Corp., 677 F.2d 985, 992 (3d Cir. 1982); see also, Brown v. James, No. CV-03-0631, 2007 WL 461025, at *3 (M.D. Pa. Feb. 7, 2007).  To do so, the resisting party must show the requested materials do not fall within the "broad scope of relevance... or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." Brown, 2007 WL 461025, at *3, *quoting*, Burke v. New York City Police Dept., 115 F.R.D. 220, 224 (S.D. N.Y. 1987).  Once such an objection is properly stated, however, the burden shifts back to the party seeking discovery to

substantiate that the request falls within the bounds of Rule 26. City Line, 2007 WL 1377643, at *2.

### B.  Certification

_____Ocean Yachts argues that this motion must be denied due to Plaintiffs' failure to file the appropriate certification with their motion in accordance with Fed. R. Civ. P. 37(a)(2)(B) and Local Rules 7.1 and 26.3, which provide that a motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer" with the party sought to be compelled. Fed. R. Civ. P. 37 (2)(B); (Br. in Opp., Dkt. Entry 168 at 6.)  Plaintiffs responded to that charge by noting that they had leave of Court to file the motion, referencing the pretrial conference in which the Court suggested they file a motion to compel. (Pl. Br. in Supp., Dkt. Entry 164 at 2; Pl.'s Reply Br., Dkt. Entry 171 at 3.)  In addition, their motion included evidence of correspondence between the parties regarding this discovery dispute that demonstrates just such a good faith effort.  Finally, they also filed an appropriate certification with their reply brief. (See Pl.'s Reply Br. Certificate, Dkt. Entry 171-2.)

Judges need not dismiss motions to compel because they were not filed with appropriate certification, but rather have *discretion* to dismiss on those grounds. See City Line, 2007 WL 1377643, at * 2 (finding that despite the lack of the required certification, the motion would not be dismissed on that technical ground).  In this case, dismissal of the motion is not warranted considering that Plaintiffs (a) did include evidence of a good faith effort to resolve the

dispute in the motion's exhibits, (b) filed their motion with leave of Court, and (c) attached just such a certification to their reply brief.  Accordingly, the motion will not be dismissed because of Plaintiffs' failure to file certification with their motion to compel.

**C.  Deposition of John Leek**

Plaintiffs argue that pursuant to Rule 30 "a party may take the testimony of any person including a party, by deposition...." (See Pl.'s Br. in Supp., Dkt. Entry 164 at 2.)  They find specific support for their deposition of Leek, a corporate officer, in the Notes of the Advisory Committee on the 1970 Amendments, which indicate: "Thus, if the examining party believes that certain officials who have not testified to this subdivision [30(b)(6)] have added information, he may depose them." See Fed. R. Civ. P. 30.  Plaintiffs contend that Leek is a valid target for deposition because he is knowledgeable about manufacturing defects in Ocean Yachts' production process.  Plaintiffs' foundation for alleging Leek's knowledge of such defects is an interview with his son, printed in the Summer 2006 edition of "Passages."  The relevant section reads:

> \*  Question: Many people reading your father's remarks in the Winter 2005 "Passages" were surprised by his candor.

> \*  Son: While it could not have been easy to admit deficiencies in the manufacturing process he himself oversees, I wouldn't have expected anything short of absolute honesty from him.  It's in his character.  Quality, or its absence, is something you can't hide anyway.  People notice - in our case not so much new owners; we never allowed an Ocean to be commissioned until it met with our approval.  But often that meant correcting deficiencies while the boat was at the dealership, or still at our completion

area at 'The River.'  That's inefficient.  It's also frustrating for the customer whose new boat delivery is delayed.

* <u>Question</u>: What are you doing to remedy the problem?

_____ * <u>Son</u>: We've initiated a multi-step gig process before every boat leaves the factory for an Ocean dealer or owner.

* <u>Question</u>: Gig?

* <u>Son</u>: It's a military term meaning a demerit during inspection.  With the new process and the commitment of personnel at every level, the factory gig lists are growing shorter.  That translates into boats that leave 'The River' on time and with few, if any, deficiencies to be corrected at the dealership or yard. The new owner takes possession of his boat when he expects to and without warranty issues later on.  What we've done is to engineer quality into every aspect of production: fiberglass layup... mechanical, woodworking, and hardware.  So when the hull and deck are mated and the bridge is attached, quality has been integrated into every system and component in the yacht. (Pl.'s Br. in Supp. - Ex. A, Dkt. Entry 164-2.)

_____

_____Plaintiffs contend that this exchange indicates Leek is aware of "manufacturing defects plaguing the Defendant," as evidenced by his company's efforts to alter its manufacturing process. (Pl. Br. in Supp., Dkt Entry 164 at 4; <u>see also</u>, Pl.'s Reply Br., Dkt. Entry 171 at 1.)  In addition, Plaintiffs indicate that the choice of which corporate officers will provide information via deposition is not the prerogative of the company involved: "Thus a party who wishes the deposition of a specific officer or agent of a corporation may still obtain it and is not required to allow the corporation to decide for itself whose testimony the party may have." Wright & Miller, <u>Federal Practice and Procedure</u>, 374, § 2103 (1970). _____

8

_____Ocean Yachts make two basic arguments against this deposition.  First, it contends that the interview in the Winter 2005 "Passages" does not indicate any knowledge of, or reference to, manufacturing defects relevant to this case.  In support of this argument, it encloses with its opposition brief a copy of Leek's statements in Winter 2005 that are referenced in the Summer 2006 interview with his son.  (See Br. in Opp. - Ex. B, Dkt. Entry 168-2.)  The relevant section from his message reads:

_____"The year that we have just completed was one of transition for Ocean... Transitions cannot always be seemless.  To our regret, ours was marred, in some instances, by an inability to deliver product on time, to several owners and dealers.  We sincerely regret that inconvenience. . . .  I trust you will also understand that this unfortunate disruption is an inevitable result of any company's evolution, as it undertakes to make its business better."(Id.)

_____Ocean Yachts claims it is "obvious from reading that message . . . [that] Leek . . . was referring to a significant transition in the manufacturing process that began in 2004 and which was implemented over the following year.  He was discussing the delays that resulted in delivering new boats as a result of that change." (Br. in Opp., Dkt. Entry 168 at 4.)  It supports this by highlighting several passages from the son's interview in the Summer 2006 edition that indicate the issue addressed is delay of delivery, *not* that boats were released into the stream of commerce with defects akin to those alleged by Plaintiffs.  The highlighted sections underlined are:

"in our case not so much new owners; we never allowed an Ocean to be commissioned

9

until it met with our approval."; and

"It's also frustrating for the customer whose new boat delivery is delayed."

Ocean Yachts observes that "Neither he or his son were talking about manufacturing defects and they certainly were not discussing manufacturer defects that existed in late 2001/early 2002, when Plaintiff's boat was built." (Id. at 4.)

_____The company also cites discovery limitations set out in Rule 26(b)(2)(C) that allow the Court to limit discovery if it concludes that:

> (I) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive;
> (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit.

_____Ocean Yachts' second argument references sub-section (i), as it argues this deposition would be unreasonably cumulative or duplicative.  The company states that it has already provided corporate officers with more knowledge of the manufacturing process relevant to this case: Scott Krawic (former sea trial captain and current customer service manager in charge of customer/dealer warranty issues), Terrance Watson (head of Ocean Yachts' engineering and research/development departments), and Stephen Bush (supervisor of the work crew that installed the engines into "Reel Justice").  (Br. in Opp., Dkt. Entry 168 at 4-5.)  The fact that these officers have already been deposed regarding the details of the manufacturing process

supports Ocean Yachts' claim that a deposition of Leek, an individual with less intimate

knowledge of the process than those already deposed, is unreasonably cumulative.

_____Plaintiffs responded to this by claiming that the alterations in Ocean Yachts'

manufacturing process during 2004 were the result of existing "manufacturing deficiencies"

discovered by the company.  Plaintiffs aver that the company's "overhaul of their manufacturing

process" indicates that Leek was aware of defects that he sought to change, and thus his

"knowledge regarding pre 2004 manufacturing deficiencies . . . is certainly relevant." (Pl.'s

Reply Br., Dkt. Entry 171 at 2, ¶ 1.)  They also claim that the deposition "in all likelihood would

not be lengthy" or "broad based," but rather focused on a "a very narrow tailored set of issues"

involving manufacturing defects at the company over which he had "ultimate control." (Id., ¶¶ 2-

3.)  In addition, Plaintiffs state that they are not seeking to depose an "unnecessary large

number" of Ocean Yachts' officers, but only one corporate officer whom they aver is

"knowledgeable about manufacturing defects." (Id. at 1, ¶ 2.)

_____While it is true that Rule 26 affords ample boundaries for discovery, the Court has

discretionary power "to prohibit the disclosure of information when such disclosure would result

in... harassment or abuse of the judicial process." Holm v. Pollack, No. CV-00-2893, 2001 WL

1257728, *1 (E.D.Pa. Oct. 19, 2001).  These Plaintiffs have already had extensive discovery to

uncover information from Ocean Yachts that would be useful in building a case.  In that regard,

this situation is similar to another maritime case in which discovery disputes took place. See

Maute v. Lloyd Bermuda Lines, Ltd., 931 F.2d 231, 237 (3d Cir. 1991).  In Maute, the Third

Circuit found, *inter alia*, that the Plaintiff had ample time and opportunity to discover relevant

information - via deposition of officers and collection of copious documents - and that without

any "additional fruitful purpose" the District Court was not wrong in denying an extension of time

to depose yet another officer. See 931 F.2d at 237.  Here, too, the Plaintiffs have interviewed

several officers, garnered many documents, and not given a convincing reason as to why

further deposition is likely to lead to any relevant evidence not already produced.

This case is unlike those in which Plaintiffs have been unduly hampered in discovery,

and deposition of an individual or production of a set of documents is necessary for building a

valid case. See Pacitti v. Macy's, 193 F.3d 766, 778 (3d Cir. 1999).  In Pacitti, for example, the

Third Circuit found that a Plaintiff had been improperly denied access to information essential in

a fraudulent misrepresentation claim, and remanded the case to expand discovery in

accordance with their opinion. See id. Here, however, Plaintiffs have engaged in significant

discovery already, including the deposition of several knowledgeable corporate officers.

Ocean Yachts' reply brief demonstrates that the deposition of Leek is "of such marginal

relevance that the potential harm occasioned by discovery would outweigh the ordinary

presumption in favor or broad disclosure." Brown, 2007 WL 461025, at *3, *quoting*, Burke, 115

F.R.D. at 224.  While it may be that the burden created by deposing the company President

would be minimal, the benefit to the Plaintiffs' case appears non-existent.  Accordingly, the

12

motion to compel the deposition will be denied. __

**D.  Production of *"Passages"* Issues**

Ocean Yachts claims that the Plaintiffs, through their three previous requests for documents, have already garnered all of the information necessary to prepare a case.  It avers that this fourth request, including the call for "Passages" issues, "seems ironically like a fishing expedition," and claim that the Plaintiffs should have copies of these issues already - since they are owners of an Ocean Yachts product, and all customers/owners received these publications. (Br. in Opp., Dkt. Entry 168 at 5.)  The company claims that this production is unduly burdensome, as the issues requested cover a six-year period while the case deals only with the failure of "one bolt mounting system installed in 2001 and which failed in 2004." (Id.)  It also asserts that information through these years is irrelevant, as the Plaintiffs "have already learned through discovery that the type of engine bolts that failed were not used after 2002 and that no more than four boats manufactured by Ocean Yachts in 2001 had the same mounts." (Id.)

Plaintiffs countered in their reply brief by citing Third Circuit support for the proposition that the mere statement by a party that an interrogatory is "overly broad, burdensome, oppressive, and irrelevant" is not adequate to successfully object; rather, the party resisting discovery must show "specifically how . . . each interrogatory is not relevant or how each question is overly broad or burdensome." Josephs, 667 F.2d at 992.  They aver that Ocean Yachts has not adequately met that standard, pointing out that they seek only "the discovery of

a total of twelve (12) magazines from the years 2001 through 2006," an amount they claim "is not overwhelming or burdensome in any way." (Pl. Reply Br., Dkt. Entry 171 at 3.)

_____Considering all of these arguments, Ocean Yachts' claim that this request is overly burdensome rings hollow.  In addition, the "directive of the Federal Rules to eliminate surprise from litigation demands that [the Court construe the rules...] reasonably to facilitate this goal and maximize pre-trial exchange of materials." Buffington v. Wood, 351 F.2d 292, 297 (3d Cir. 1965).  Thus, balancing issues of fairness and efficiency, this part of the motion to compel will be granted.

_____An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERT J. POWELL, DEBRA POWELL** | : | |
| **and FISHIN FOR A GOOD TIME** | : | |
| **CHARTERS, LLC__** | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | **3:CV-04-2611** |
| | : | **(JUDGE VANASKIE)** |
| **SOUTH JERSEY MARINA, INC. t/a** | : | |
| **SOUTH JERSEY YACHT SALES,** | : | |
| **OCEAN YACHTS, INC.** | : | |
| **PERFORMANCE DIESEL, INC. and** | : | |
| **MAN ENGINES AND COMPONENTS, INC.** | : | |
| | : | |
| **Defendants** | : | |

**ORDER**

_____**NOW, THIS 1st DAY OF AUGUST, 2007,** for the reasons set forth in the foregoing

Memorandum, **IT IS HEREBY ORDERED THAT:**
_____

_____1.  The Plaintiffs' Motion to Compel (Dkt. Entry 163) is **GRANTED IN PART** and

**DENIED IN PART**.

_____2.  Ocean Yachts shall produce the issues of Passages requested by Plaintiffs within

twenty (20) days of the entry of this Order.  In all other respects, the motion to compel is

denied.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge